[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 17, 2010
JOHN LEY
CLERK

No. 09-12975
Non-Argument Calendar
_____

D. C. Docket No. 06-00035-CR-1-MMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BETTY JO RAINS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 17, 2010)

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Betty Jo Rains appeals her convictions and sentences for conspiracy to

distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §

846, and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Rains argues that she was entitled to a reduction based on her substantial assistance under U.S.S.G. § 5K1.1 and, alternatively, that she was entitled to withdraw her guilty plea. We affirm.

Rains was charged with conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine, and possession of firearms in furtherance of a drug-trafficking crime. In April 2007, she agreed to plead guilty to both counts pursuant to a written plea agreement.

The plea agreement contained the following provisions:

BETTY JO RAINS agrees to cooperate fully and truthfully with the United States Attorney . . . . Such cooperation shall include but is not limited to providing complete and truthful debriefings and testimony at grand jury, trial and as otherwise requested, involving any matter under investigation.

The parties agree that the United States Attorney may revoke this agreement upon showing, by a preponderance of the evidence, any of the following:
1. that defendant has refused to cooperate as required by this agreement; 2. that defendant's statements or testimony has been untruthful or incomplete; 3. that defendant has failed to comply with any of the terms of this agreement; 4. that defendant has any criminal liability for homicide; or 5. that defendant has engaged in further criminal conduct after entering into this agreement.

If this agreement is revoked:
1. The plea of guilty entered by BETTY JO RAINS pursuant to this agreement and any judgment entered thereon shall remain in full force and effect and will not be the subject of legal challenge by the

2

defendant.

. . .

4. The defendant, regardless of cooperation, and at the sole discretion of the United States Attorney, may be deemed not to have provided substantial assistance.

If, in the sole discretion of the United States Attorney, BETTY JO RAINS is deemed to have provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, if BETTY JO RAINS has otherwise complied with all terms of this agreement . . . the United States Attorney will file a substantial assistance motion . . . .

At the plea hearing, the district court advised Rains of her rights and that the court's acceptance of her guilty plea would waive all of those rights. The court informed Rains of the statutory minimum and maximum sentences. Rains confirmed that she had discussed the sentencing guidelines with her lawyer, that the signature on the plea agreement was hers, and that she read and fully understood all of its terms and conditions. The court stated:

Your agreement requires you to cooperate with the government. This cooperation may take several forms. . . . However, your agreement does require that whatever statement you make or whatever testimony you give, that it must at all times be absolutely truthful. . . . Now if you do not cooperate or if the statements that you make or the testimony that you give is not truthful, the government make revoke your plea agreement and . . . any guilty plea that you have entered would stand. You would not be permitted to withdraw from the guilty plea.

When asked if she understood this aspect of her agreement, Rains confirmed that she did. The court asked if Rains and her lawyer had discussed the plea

agreement and all of its terms and conditions in detail, if anyone made any promise to Rains to induce her guilty plea beyond those contained in the written plea agreement, and if anyone had used threats, force, pressure or intimidation to induce her plea. Rains responded that she had discussed and understood the terms of the plea and had not been induced into entering it. The court asked Rains if she had sufficient time to discuss her case fully with her lawyer, to which Rains responded that she had. Rains further confirmed that she was satisfied with counsel. The court accepted Rains's guilty plea and released her pending sentencing.

Shortly after her release, a pretrial services officer filed a petition requesting that Rains be arrested and ordered to show cause why her bond should not be revoked. The petition stated that law enforcement officers obtained evidence that Rains's boyfriend, incarcerated codefendant Bruce Adams, Jr., had telephoned Rains from prison approximately 327 times from November 2006 through April 2007. Some of the calls were recorded and revealed that Adams and Rains had discussed Rains providing false testimony at Adams's trial. Additionally, law enforcement officers discovered letters from Rains to Adams confirming the testimony that she would provide.

Based on this conduct, the government filed a motion to revoke Rains's plea agreement, asserting that Rains violated the terms of her plea agreement and

supervised release by having contact with a codefendant and lying to investigators.

At a hearing on the government's motion, Rains testified that she understood that the government could revoke the plea agreement, but that she did not understand why she would not receive a benefit from the assistance she had given. Counsel questioned whether he had explained the terms of the plea agreement to Rains before she entered the plea. Rains stated that she understood most of the agreement, but she had only been given about fifteen minutes to review it and she had not understood everything the judge had explained at the change-of-plea hearing. When questioned by counsel, Rains admitted that she had discussed the agreement "page by page" with counsel prior to the plea hearing and that counsel had adequately prepared her for the hearing. Rains further confirmed that she understood, when she entered the plea, that she had to be truthful with the government or the government could revoke the plea agreement and refuse to seek a reduction in Rains's sentence. The court then asked Rains if she wished to admit or deny the allegations that she did not fully cooperate with the government. Rains responded, "I guess I admit part of that but I have no choice." The court revoked Rains's bond.

The court later held a hearing on the revocation of the plea agreement, at which Rains admitted violating the plea agreement and stated that she did not wish

5

to oppose the motion to withdraw it.  After the court reminded Rains that she would not be able to withdraw her plea and that she likely would not get a reduction for substantial assistance, and Rains indicated that she understood, the court granted the motion to revoke the plea agreement.

Over the next two years, Rains filed fourteen motions to continue sentencing before moving to compel the government to file a substantial assistance motion. Although she acknowledged that her plea agreement had been revoked, Rains argued that she provided the government with immediate assistance and that the government's bad faith qualified as a constitutionally impermissible motive for refusing to file a substantial assistance motion.  Alternatively, she asserted that she should be permitted to withdraw her plea due to ineffective assistance of counsel.

At a hearing on Rains's motions, Rains's new counsel argued,

> the question left is whether or not - - whether the defendant is entitled to substantial assistance or a motion by the government under two different bodies and competing bodies of law, mainly the Wade case and Santabello.  And if it is considered a contract then we're - - under Santabello, we're entitled to enforcement, I would submit.  If it's under Wade then we have to show bad faith.  And frankly . . . I have no evidence to show bad faith.  And even if I did, I think the court has, at the time of the motion to vacate the plea, probably entertained that evidence and ruled accordingly.  But I still submit that the substantial assistance that Ms. Rains gave the government, mainly she cooperated immediately following her arrest. . . . And another separate point is that that order vacating the plea sets-aside merely the government's obligations.  And it doesn't set-aside the defendant's obligations.  So if it were a true vacation of the plea we would be here

6

pleading anew. So I'm not so sure we want to do that anyway.

The government responded that the issue of enforcement of the plea agreement was moot since the plea agreement was revoked. The government explained that it declined to file a motion for a reduction based on substantial assistance because Rains made untruthful statements to investigators and at the trial of one of her codefendants. After agreeing that there no longer was a plea agreement, the court found that Rains had been advised that she would not be permitted to withdraw her plea and that there was no evidence of bad faith or an unconstitutional motive for the government's decision not to file for a reduction. Thus, the court denied the motion to compel or to withdraw the plea.

Rains then presented evidence in support of her motion to set-aside her plea based on ineffective assistance of counsel. Rains testified that she had provided her previous attorney with cocaine and marijuana numerous times from the mid-eighties through the early-nineties. Rains testified that previous counsel had not discussed the plea agreement fully with her, and that he warned her that if she told the judge that she did not understand the plea, the judge would not accept it. The government asked Rains if she wanted to plead guilty as charged, and she responded, "[i]n exchange for help, yes." According to Rains, counsel forced her to enter a plea by telling her she had no choice. She stated that counsel explained

7

little about the plea agreement and she was afraid to ask about the terms in court because counsel had coerced her. When asked if she had been truthful during the plea colloquy, specifically when the court had inquired if she had been coerced to enter the plea, Rains responded that she "did what her lawyer told her to do." She stated that she "didn't even know that you could sign a plea and then have it taken away from you."

In rebuttal, government presented the testimony of deputy sheriff Travis Devinny, who was the lead investigator on the Rains case. Devinny stated that he had interviewed Rains seven to eleven times and Rains never implicated counsel in the drug transactions. Devinny further testified that Rains never told him that she was coerced into making her plea, that Rains never said that she was not guilty of the crimes, and that no time before the present hearing had anyone accused counsel of receiving drugs from Rains.

Defense counsel argued that "it would be a much cleaner record if we withdrew the plea and possibly reentered it. And I tried to do it by way of this motion to compel." Counsel asserted that if Rains was not allowed to withdraw her plea, the government should be held to its obligations under the plea agreement because "part of her plea is left in place."

The government argued that the allegations regarding previous counsel's

drug use were so remote in time from the representation that there was no conflict of interest and that Rains had not presented any credible evidence to show she had been coerced into entering a plea. The court denied the motion to withdraw the plea, finding that Rains had not shown ineffective assistance of counsel. The district court sentenced Rains to 211 months' imprisonment on the conspiracy count and a consecutive 60-month term of imprisonment on the firearm count. Rains now appeals, arguing that she was entitled to a reduction based on her substantial assistance and, alternatively, that she should have been permitted to withdraw her plea.

A. Motion for Substantial Assistance

We review *de novo* whether a district court may depart downward from the applicable guideline range under § 5K1.1 in the absence of a governmental motion. *United States v. Forney*, 9 F.3d 1492, 1498 (11th Cir. 1993). Under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, "the condition limiting the court's authority gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted." *Wade v. United States*, 504 U.S. 181, 185, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992). Because of this broad grant of prosecutorial discretion, a district court has the authority to review a prosecutor's refusal to file a substantial assistance motion only if it finds that the refusal was based on an

unconstitutional motive, such as a defendant's race or religion. *Wade*, 504 U.S. at 185-86, 112 S.Ct. at 1843-44. A defendant's generalized allegations of improper motive will be insufficient to entitle the defendant to a remedy. *Id.* Additionally, the defendant's showing of actual assistance, although a necessary condition to relief, is insufficient to provide relief absent a claim of unconstitutional motive. *Wade*, 504 U.S. at 186, 187, 112 S.Ct. at 1844.

Here, Rains did not allege an unconstitutional motive for the government's refusal to file a substantial assistance motion on her behalf. Thus, Rains's substantive argument that she was entitled to a reduction under § 5K1.1 fails.

B. Motion to Withdraw the Guilty Plea

We review the denial of a request to withdraw a guilty plea for abuse of discretion. *United States v. Freixas*, 332 F.3d 1314, 1316 (11th Cir. 2003). There is no abuse of discretion unless the denial is arbitrary or unreasonable. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006) (*citing United States v. Weaver*, 275 F.3d 1320, 1328, n. 8 (11th Cir. 2001)). A district court abuses its discretion when it fails to apply proper legal standards or procedures, or makes clearly erroneous findings of fact. *United States v. Izquierdo*, 448 F.3d 1269, 1276 (11th Cir. 2006).

After a district court has accepted a plea and before sentencing, the court

may, pursuant to Fed. R. Crim. P. 32(e), permit a guilty plea to be withdrawn if the defendant is able to show a "fair and just reason" for the request. *United States v. Weaver*, 275 F.3d 1320, 1327 (11th Cir. 2001). To determine whether a defendant has met the burden of showing a fair and just reason, a district court can consider the totality of the circumstances surrounding the plea. *Brehm*, 442 F.3d at 1298. Specific factors for the district court to consider are: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant is permitted to withdraw the guilty plea. *Id*. Additionally, more substantial reasons for the withdrawal must be shown if there has been a lengthy delay between the entry of the plea and the motion to withdraw it. *Id*.

Here, after considering all of the evidence, the district court concluded that Rains was not entitled to withdraw her plea. Upon review, we cannot conclude that this determination was arbitrary or unreasonable. The district court properly applied the legal standards and procedures, and its factual findings were not erroneous. Rains simply did not meet her burden of showing a fair and just reason to withdraw her plea. Thus, the district court did not abuse its discretion by denying the motion to withdraw the plea.

**AFFIRMED.**